IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY YOUNGBERG, individually; MISTY YOUNGBERG, as Personal Representative of the ESTATE OF KRISTOPHER YOUNGBERG, deceased; TIFFANY WALDROP, INDIVIDUALLY AND AS GUARDIAN OF CHRISTOPHER WALDROP; CHRISTOPHER WALDROP, BY AND THROUGH HIS GUARIDAN TIFFANY WALDROP; SEAN CONNELL; CHRISTIE CONNELL; KEVIN COFFMAN; HEIDI COFFMAN; WILLIAM OVERSHINER; and LAUREN PADGETT;<br><br>    Plaintiffs,<br><br>vs.<br><br>GENERAL MOTORS, LLC;<br><br>    Defendant. | Case No. 6:20-cv-00339-RAW |

**PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY FROM DEFENDANT GENERAL MOTORS LLC AND BRIEF IN SUPPORT**

Plaintiffs respectfully move this Court to overrule the objections and compel Defendant General Motors LLC ("GM") to supplement its answers and responsive records to Plaintiffs' First Set of Interrogatories Nos. 2-7, 9-18, and Plaintiff's First Requests for Production Nos. 1-7, 9-10, 12-16, 18, 25-30, 37-38, and 41-42, within ten (10) days of the Court's Order, pursuant to *Fed. R. Civ. P. 26(b)(1), 37 (a)(3)(B)(iii)-(iv), (4)*. Plaintiffs' counsel certifies that counsel for Plaintiffs and counsel for GM have conferred in good faith in an attempt to resolve this discovery dispute in three telephone conferences and in writing as shown in Exhibit A-8, but have been unable to reach an accord, pursuant to *LCvR 7.1(f)*. Plaintiffs submit copies of GM's Responses to Plaintiffs' First Set of Interrogatories and Request for Production, attached as Exhibits A-4 and A-5, pursuant to *LCvR 37.1*.

I.
**ANATOMY OF THE DISCOVERY DISPUTE**

Plaintiffs seek to hold GM liable on strict liability, negligence, and punitive damages

claims.[1] Plaintiffs allege that the GM 2013 Chevrolet Express 15 Passenger van (the "Van") is defective and unreasonably dangerous because it was not safely designed to avoid or mitigate foreseeable frontal crashes and injuries with its brake and safety systems, was not equipped with a Collision Avoidance Safety System, and the warnings fail to adequately warn or instruct consumers about the hazards or the benefits of the available alternative safer designs.[2] Plaintiffs allege that GM negligently designed the Van because GM's management had notice or was aware of the risks and defects and the benefits of Plaintiffs' alleged alternative safer frontal Collision Avoidance System designs—Forward Collision Warning, marketed by GM as Forward Collision Alert, Automatic Emergency Braking and Adaptive Brake Assistance, marketed by GM as Automatic Emergency Braking with Integrated Brake Assist, and Cross Traffic Assist Systems (the alleged "Safer Designs")—that were developed and put into production by GM and its suppliers and competitors more than a decade before the design and manufacture of the subject 2013 Van and nearly two decades before the collision involving the Plaintiffs in this case.[3] Plaintiffs further allege that GM ignored the risks and defects and the benefits of the alleged alternative Safer Designs, and chose to use the alleged Safer Designs in its other vehicles to differentiate premium brands and as optional safety features so the prices could be marked-up in order to maximize profits, thereby warranting punitive damages.[4]

Conversely, GM denies Plaintiffs' strict liability, negligence, and punitive damages claims and alleges 26 general and affirmative defenses,[5] which in pertinent part for this discovery dispute, denies the Van was defective and contests causation (¶¶ 2-8, 15, 19, and 22-24), asserts compliance with all applicable federal motor vehicle safety standards, which may bar Plaintiffs' claims by preemption and also may provide a rebuttable presumption that GM is not liable under state law (¶ 9), claims the design of the Van conformed to generally recognized and prevailing standards or state of the art in existence at the time of the subject vehicle's design, manufacturing and construction (¶ 11), and that the Van was sold to the federal government's requested specifications and, as such, may bar Plaintiffs' recovery (¶ 21).

The subject model GMT610 G/H Express and Savana vans were introduced in the 2003

---

[1] Plaintiffs' Complaint, (Dkt. No. 2, ¶¶ 41-61, 62-70, and 110-112, Exh. A-2).
[2] Plaintiffs' Complaint, (Dkt. No. 2, ¶¶ 54-55, and 61, Exh. A-2).
[3] Plaintiffs' Complaint, (Dkt. No. 2, ¶¶ 17-19, 44-52, and 55, 64-66, and 70, Exh. A-2).
[4] Plaintiffs' Complaint, (Dkt. No. 2, ¶¶ 110-112), Exh. A-2).
[5] GM's Answer, (Dkt. No. 19, p. 1 and 18-25, ¶¶ 1-26, Exh. A-3).

model year, replacing the prior generation GMT600 vans,[6] and production continues through the current 2021 model year.[7]

The parties disagree as to the scope of discovery and whether GM has timely and properly answered Plaintiffs' discovery. Plaintiffs contend that the timeframe for discovery should be from 2003 to the present to mirror the model years of the subject GMT610 vans.[8]  Plaintiffs contend that the scope of discovery should cover the notice to GM of the risks and defects in its vehicles without the alleged alternative Safer Designs that GM acquired from monitoring the performance of its prior vehicles and the model vans in other similar incidents, claims, and lawsuits ("OSIs"), GM's awareness of the benefits of the alleged Safer Designs that was developed through its design analysis of the performance of its vehicles with the Safer Designs, and the designs and tests of the Van and warnings,[9] pursuant to the claims[10] and defenses[11] alleged in this case. *Fed. R. Civ. P. 26(b)(1); In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1191 (10th Cir. 2009) ("Because the plaintiffs' theory of the case includes the argument that Cooper was on notice of the tread separation problem, the district court was not clearly in error in concluding that information on other tires manufactured to specifications other than GTS 5015 could tend to lead to discoverable evidence. *See Fed. R. Civ. P. 26(b)(1).*").

GM has asserted a litany of general objections that Plaintiffs' discovery is vague, overly broad, argumentative, irrelevant, unduly burdensome, and not proportional to the needs to the case because it is not limited to substantially similar incidents involving the model vans and claims nor are the alleged Safer Designs limited to vehicles that are substantially similar to the model vans.[12] GM's responses were due by March 17, 2021. The parties have met and conferred since March, but GM has failed to answer most of Plaintiffs' discovery.[13]  Without waiving its objections, GM advised that it would be supplementing its discovery responses by Friday, May 28, 2021, but failed to do so,[14] even though the agreed deadlines to file amended pleadings and add parties is June 2,

---

[6] The GMT600 was the first generation or model of the vans and was in production from 1996 to 2003.
[7] GM's Responses to Plaintiffs' Interrogatories and Request for Production, p. 2, respectively, Exh. A-4 & A-5).
[8] Hannemann Declaration, Exh. A, ¶¶ 16-17.
[9] Hannemann Declaration, Exh. A, ¶¶ 18-39.
[10] Plaintiffs' Complaint, (Dkt. No. 2, ¶¶ 41-61, 62-70, and 110-112, Exh. A-2).
[11] GM's Answer, (Dkt. No. 19, p. 1, ¶ 1, and defenses, p. 18-25, ¶¶ 1-26, Exh. A-3).
[12] GM's Responses to Plaintiffs' Interrogatories Nos. 2-7, 9-18, Exh. A-4; and General Motors Response to Plaintiffs' First Requests for Production Nos. 1-7, 9-10, 12-16, 18, 25-30, 37-38, and 41-42, Exh. A-5.
[13] Meet and confer correspondence, Exh. A-8.
[14] Exh. A-8, p. 1 & 4.

2021 and Plaintiffs' expert disclosure deadline is September 10, 2021.[15] Accordingly, Plaintiffs respectfully contend that GM's general objections are improper and GM has failed to timely and properly answer the discovery, which is relevant to the claims and defenses in this case pursuant to *Fed. R. Civ. P. 26(b)(1)* and the scope of discovery approved by the Tenth Circuit in *In re Cooper*, 568 F.3d at 1191-1192 and its progeny that do not require Plaintiffs to prove substantial similarity for the discovery sought here.

The attached declaration from automotive engineer Neil Hannemann explains how the discovery which seeks to determine whether GM is the sole entity that is responsible for safely designing the Van and warnings as to frontal collisions with the rear of other vehicles; whether GM received notice or was aware of the risks and defects and the benefits of Plaintiffs' alleged alternative Safer Designs during its production of the model vans; what designs, design objectives and performance standards, and tests and warnings were offered by GM for the Van, and whether GM's conduct was reckless, intentional or wanton are relevant to his analysis of Plaintiffs' claims and GM's denials and defenses.[16] Mr. Hannemann further explains why GM's arguments that the discovery seeks dissimilar incidents, claims and lawsuits and alternative designs that are not interchangeable with the subject Van are misguided as the discovery is limited to similar incidents, claims, and lawsuits and the alleged alternative Safer Designs could have been developed, tuned, and calibrated for the Van.[17]

## II.
## Brief in Support

**A.     Oklahoma substantive law and federal procedural law govern the discovery dispute.**

In actions where jurisdiction is based on diversity of citizenship, such as this case, the substantive law of the forum state and federal procedural law are applied. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 877 (10th Cir. 2006) (The broad command from *Erie* and its progeny is for federal courts "to apply state substantive law and federal procedural law."); *Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989) (The substantive law of the forum state is customarily applied to determine the claims of the parties.).

---

[15] Scheduling Order, (Dkt. No. 60 at 1-2).
[16] Declaration of Neil Hannemann, Exh. A, ¶¶ 16-39.
[17] Declaration of Neil Hannemann, Exh. A, ¶¶ 22 & 31-33.

### B.     Federal Discovery Rules

*Fed. R. Civ. P. 1* is the guidepost for resolution of discovery disputes. *Reibert v. CSAA Fire & Cas. Ins. Co.*, Case No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860, *5; 2018 WL 279348 (N.D. Okla. Jan. 3, 2018). It provides that the rules of civil procedure should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *Fed. R. Civ. P. 1*.

*Fed. R. Civ. P. 26(b)(1)* defines the scope of discovery. *Reibert,* 2018 U.S. Dist. LEXIS 860, *at* *5-6. *Rule 26(b)(1)* provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Accordingly, for any information requested in discovery, courts must inquire: "(1) is the information privileged; (2) is it relevant to a claim or defense; and (3) is it proportional to the needs of the case." *Reibert*, 2018 U.S. Dist. LEXIS 860 *6, (citing *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 402 (D. Wyo. 2017)). In this case, GM does not contend that Plaintiffs' discovery is privileged. GM instead has lodged general objections and argues that the discovery is not proportional because it is not limited to substantially similar OSI's and substantially similar vehicles with the alleged Safer Designs.

#### 1.     Relevance Standard

*Rule 26(b)(1)* specifically permits discovery "relevant to any party's claim or defense." Following the 2015 Amendment to *Rule 26*, "relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Id*. (citing *United States ex. rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016)). Lower courts within the Tenth Circuit have endorsed this broad view of relevance following the 2015 Amendment. *Id.*; *see also Chrisman v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, Case No. CIV-17-1309-D, 2020 WL 7033965, at *3 (W.D. Okla. Nov. 30, 2020); *Benavidez v. Sandia Nat'l Labs., 319 F.R.D. 696, 717 (D.N.M. 2017)* (adopting above-quoted standard for analyzing whether discovery is relevant to party's claim or defense); *Rowan v. Sunflower Elec.*

*Power*, Cause No. 15-CV-9227-JWL-TJJ, 2016 U.S. Dist. LEXIS 91108, 2016 WL 3745680 at *2 (D. Kan. July 13, 2016) (same); *Taylor v. Hy-Vee, Inc.*, No. 15-9718-JTM, 2016 U.S. Dist. LEXIS 177764, at *5 n. 36 (D. Kan. Dec. 22, 2016) (same); *cf. Henry v. Morgan's Hotel Group, Inc., 2016 U.S. Dist. LEXIS 8406, 2016 U.S. Dist. LEXIS 8406, 2018 WL 303114 at *3 (S.D.N.Y. Jan. 25, 2016)* (same). Courts use "a broad definition of relevance when determining whether discovery is permissible, because discovery is designed to help define and clarify the issues." *Reibert*, 2018 WL 279348, at *3 (quoting *Barton v. Tomacek*, No. 11-CV-0619-CVE-TLW, 2012 U.S. Dist. LEXIS 142934, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012)).

  2.  ***Burden of Proof***

  Plaintiffs bear the initial burden of showing that their discovery is relevant to their claims and/or GM's defenses pursuant to *Fed. R. Civ. P. 26(b)(1)*. *Id.* at *8-9 ("Parties must demonstrate the requested discovery's relevance to a 'claim or defense."). Plaintiffs, however, do not have the burden of proving substantial similarity for the discovery sought in this case. *See In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191-1192 (10th Cir. 2009) (holding that the substantially similarity requirement depends upon the underlying theory of the case (i.e., the claims and defenses asserted) and may be "relaxed . . . when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect"; *Reibert*, 2018 U.S. Dist. LEXIS 860, at *15-16 ("Requested information need not be admissible to be discoverable, *Fed. R. Civ. P. 26(b)(1)*, and discovery regarding 'other incidents' may be permissible if relevant to a claim or defense and otherwise proportional to the needs of the case, *see Fed. R. Civ. P. 26* advisory committee's notes to 2015 amendment."); *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 671 (D. Kan. April 15, 2015) ("Placing the significant burden of proving substantial similarity on a plaintiff to obtain discovery in the first instance would be misplaced, given that the plaintiff has not yet obtained the information it would need to prove substantial similarity."); *Rivera v. Volvo Cars of N. Am., LLC*, 2014 U.S. Dist. LEXIS 200081, 2014 WL 1262248, at *7 (D.N.M. Aug. 5, 2014) (concluding that the utility of the *Cooper Tire* similarity test is further limited where a plaintiff seeks discovery of alternative designs which is more appropriately guided by general discovery principals—that is, whether the alleged safer design is relevant to the claims and defenses in the case). Thus, unless Plaintiffs' discovery is vague, overly broad, argumentative, irrelevant, or unduly burdensome on its face, GM must specifically show, despite the broad discovery rules, how each interrogatory and request for production is objectionable and not proportional for this case. *McKellips v. Kumho Tire*

*Co.*, 305 F.R.D. at 671.

### 3. Proportionality Analysis

A "proportionality" analysis involves six enumerated considerations: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Reibert*, 2018 U.S. Dist. LEXIS 860, at *10-11 (citing *Fed. R. Civ. P. 26(b)(1)*).

The Advisory Committee explained that the "monetary stakes" of a given case are "only one factor, to be balanced against other factors" in the proportionality analysis and that vindication of personal or public values may play as great a role. *Fed. R. Civ. P. 26* Advisory Committee's notes to the 2015 Amendment. Moving these considerations to the text of *Rule 26(b)(1)* was not intended to "place on the party seeking discovery the burden of addressing all proportionality considerations." *Id.* Nor was it intended to "permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." *Id.* The committee offered the following explanation of the parties' respective obligations, and the court's role, in assessing proportionality:

> "A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information – with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."

*Reibert*, 2018 U.S. Dist. LEXIS 860 *11-12.

## III.
## Legal Arguments

**A.   Plaintiffs' discovery is relevant to Plaintiffs' claims and GM's defenses.**

Plaintiffs' Interrogatories Nos. 3-7 and 15 and Request for Production Nos. 2-6, and 16 (seeking GM's knowledge of the risks and defects or potential defects from other similar incidents, claims, and lawsuits (Other Similar Incidents "OSIs")), Interrogatories Nos. 9-11 and 16 and Request for Production Nos. 7, 9-10, 12-15, 18-19, and 25 (seeking GM's knowledge of the benefits of the alleged Safer Designs used by GM, its suppliers, and competitors to prevent or

minimize frontal impacts into the rear of other vehicles and injuries and deaths), and Interrogatories Nos. 12-14, 17-18 and Requests for Production Nos. 16, 26-30, 37-38, and 41-42 (seeking the designs, testing, and warnings for the subject van) are directly relevant to Plaintiffs' strict liability, negligence, and punitive damages claims in Plaintiffs' Complaint (Docket No. 2, ¶¶41-61 (strict liability claims), 62-70 (negligence claims), and 110-112 (punitive damages claims) and GM's defenses (GM's Answer, Docket No. 19, ¶¶ 2-9, 11, 13, 21-24), which allege in pertinent part defenses on causation (2-8, 15, 19, and 22-24), compliance with government standards (9), state of the art (11), and sale of the van to the government specifications (21), pursuant to *Fed. R. Civ. P. 26(b)(1)*.[18]

Plaintiffs' discovery is relevant for three reasons. First, the discovery is relevant to the elements of Plaintiffs' strict liability claims, as set out in *Okla. Unif. Jury Instr. Civil (3d) §§ 12.1* (noting that the existence of a defect, the unreasonably dangerous nature of the defective product, and causation are principal elements of Plaintiffs' products liability claim); *see also* §§ 12.2-12.5 (instructing jurors as to specific elements of products liability claims).

The following cases have approved discovery or admitted evidence at trial to support the elements of a strict liability claim against a manufacturer, including GM. *See, e.g., In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009) (holding that information on a tire manufactured to different specifications than the one at issue could lead to discoverable evidence regarding the defendant's notice of the tread separation problem); *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993) (holding that this Court did not abuse its discretion in overruling GM's substantial similarity objections and admitting two memoranda by GM employees that had criticisms of GM's different seat belt systems); *Cummings v. GMC*, Case No. CIV-00-1562-W, 2002 U.S. Dist. LEXIS 27627 at *20-21, 2002 WL 32713320 (W.D. Okla. June 18, 2002) (ruling that, given "the arguable relevance" of Plaintiffs' alleged All-Belts-To-Seats alternative design to GM's awareness of deficiencies in the designs of the seat belt in the vehicle at issue, Plaintiffs could depose GM's Rule 30(b)(6) representative on the following matters: the design and development of the All-Belts-To-Seats alternative design; GM's studies and testing of the alleged safer design; and the extent and nature of the use of the designs in GM's other vehicles); *Abel v. Mylan, Inc.*, No. 09-CV-0650-CVE-PJC, 2010 U.S. Dist. LEXIS 106436, 2010 WL 3910141, at *2 (N.D. Okla. Oct. 4, 2010) (ordering the defendant to identify employees, corporate

---

[18] Declaration of Hannemann, Exh. A, ¶¶ 16-39.

representatives and retained experts who testified at deposition or at trial in 112 other similar cases and produce transcripts and expert reports); *Karns v. Emerson Electric Co.*, 817 F.2d 1452, 1457-1460 (10th Cir. 1987) (finding expert testimony "that force of kickback could be substantially reduced by reducing speed or mass of the blade" and inadequate warnings supported affirmance of design defect and punitive damages); *Rivera v. Volvo Cars of N. Am., LLC*, 2014 U.S. LEXIS 200081, at *4-24 (D.N.M., Aug. 5, 2014) (granting discovery pursuant to Plaintiff's Rule 30(b)(6) deposition notice seeking testimony on Volvo's window system design, Plaintiff's alleged safer alternative window designs used by Volvo in its other vehicles, Volvo's design standards for its window systems, tests of the subject window system and Plaintiff's alleged safer designs used by Volvo, Volvo's warnings, and the costs of the window systems); *cf. McKellips v. Kumho Tire Co.*, 305 F.R.D. at 682 (privacy objections to discovery seeking claims, complaints, notices, and lawsuits can be adequately addressed by the defendant producing the information subject to a protective order).

Second, just as the discovery is relevant to Plaintiffs' strict products liability claims, the discovery is relevant to Plaintiffs' negligence claims as well. *Okla. Unif. Jury Instr. Civil (3d) §§ 9.1* (noting that breach of the duty of care and causation, both disputed by GM in this action, are elements of a negligence claim); *see also § 9.2 (*providing the definitions of "Negligence" and "Ordinary care"); *see also Okla. Stat. tit. 25, § 4*.

The following federal cases have admitted evidence of other similar incidents and alleged safer alternative designs on negligence claims. *See e.g., Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248-1250 (10th Cir. 2000) (holding trial court's admission of two prior incidents to show notice of defects was proper); *Bishop v. GMC*, Case No. CIV-94-286-B, 1995 U.S. LEXIS 22166, at *6, 15; 1995 WL 886817 (E.D. Okla. Aug. 18, 1995) (GM's motion in limine was denied and Plaintiff's other similar incidents were admitted as the requirement of "substantial similarity" is relaxed when the evidence is intended to demonstrate notice or awareness of the potential defect on the part of the manufacturer); *Smith v. Cent. Mine Equip. Co.*, 876 F. Supp. 2d 1261, 1269-1270 (W.D. Okla. June 27, 2012) (evidence that defendant was aware of the risks of the product, that plaintiff's injuries were reasonably foreseeable, and that the design was unreasonable in light of the likelihood and magnitude of the foreseeable hazard and in light of the costs to reduce or eliminate the harm created a question of fact for the jury on the negligence of defendant); *Fleck v. GM LLC* (*In re GM LLC Ignition Switch Litig.*), Case No. 14-MD-2543 (JMF), 2015 U.S. Dist.

LEXIS 172341, at *383; 2016 WL 9463183 (S.D.N.Y. Dec. 28, 2015) (holding that notice of other incidents prior to the plaintiff's accident may be relevant to showing negligence (citing *Schmelzer v. Hilton Hotels Corp.*, Case No. 1:05-cv-10307(JFK), 2007 WL 2826628 (S.D.N.Y. Sept. 24, 2007)). Decisions from Oklahoma's courts are similar. *See Lee v. Volkswagen of America, Inc.*, 1984 OK 48, 688 P.2d 1283, 1289 (upholding admission of Plaintiff's evidence of safer door latch in other vehicles to help show manufacturer's negligence).

Third, the discovery is relevant to Plaintiffs' punitive damages claims pursuant to *Okla. Unif. Jury Instr. Civil (3d) §§ 5.6* (requiring a showing of action that was either intentional and with malice or was in reckless disregard of the rights of another in order for punitive damages to be granted) and *5.9* (identifying the following factors that the jury must consider before awarding punitive damages that are particularly relevant to discovery to GM in this case: 1. The seriousness of the hazard to the public arising from Defendant's misconduct; 2 The profitability of the misconduct to Defendant; 3. How long the conduct lasted and whether it is likely to continue; 4. Whether there were attempts to conceal the misconduct; 5. How aware Defendant was of the conduct and its consequences and how aware Defendant was of the hazard and excessiveness; 6. The attitude and conduct of the Defendant upon finding out about the misconduct/hazard; 7. The financial condition of Defendant; and 8. The number and level of employees involved in causing or concealing the misconduct. GM denies that it acted with reckless disregard or that it intentionally or wantonly acted with malice toward Plaintiffs, but GM has failed to properly answer Plaintiffs' discovery on the factors above.[19]

The following cases have allowed discovery or admitted evidence of other similar incidents and alternative designs as relevant to a claim for punitive damages. *See e.g.*, *Karns v. Emerson Electric Co.*, 817 F.2d 1452, 1457-1460 (10th Cir. 1987) (holding that expert testimony "that force of kickback could be substantially reduced by reducing speed or mass of the blade" and inadequate warnings supported affirmance of design defect and punitive damages.) *Johnson v. General Motors Corp.*, 889 F. Supp. 451, 454 (W.D. Okla. 1995) (summary judgment denied where the evidence showed GM intentionally failed to remedy design defects in seat belts); *Okla. Ex rel. Edmondson v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 133534, at *55-56 (N.D. Okla. 2009) ("Oklahoma law permits evidence of net worth to be considered in determining punitive

---

[19] *Cf.*, Answer (Dkt. No. 19, at p. 1, ¶ 1, p. 20-23, ¶13); GM's responses to Interrogatories Nos. 2-7, 9-18 and Requests for Production Nos. 1-7, 9-10, 12-16, 18, 25-30, 37-38, and 41-42, Exh. A-4 & A-5.

damages"); *Smith v. U.S. Gypsum Co.*, 612 P.2d 251, 255 (Okla. 1980) (same). In *Thiry v. Armstrong World Indus.*, 1983 OK 28, 661 P.2d 515, 517-518, the Oklahoma Supreme Court ruled that a manufacturer should not be permitted to profit from knowingly continuing to market a defective product. Moreover, the Court held that a manufacturer's knowledge and awareness of the extent of the risk posed by a product is what separates a case that gives rise to punitive damages and one that does not. *Id.* at 518.

### B. GM's general objections are improper and GM is misapplying Rule 26(b)(1) and the "substantial similarity" standard for discovery.

The grounds for an objection must be stated with specificity. *Fed. R. Civ. P. 33(b)(4)*; *Fed. R. Civ. P. 34(b)(2)(B)*. GM's general objections and restrictive scope of discovery, which unilaterally limits discovery in a piecemeal fashion, misapplies *Rule 26(b)(1)* and the "substantial similarity" requirement from *Cooper Tire*. In *Cooper Tire*, the defendant, like GM here, argued that the scope of discovery should be limited "to the design of the Green Tire Specification ['GTS'] at issue." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1183-84. The magistrate judge who initially heard the arguments considered the defendant's arguments as to substantial similarity before ultimately rejecting them, and the district court affirmed the magistrate's ruling. *Id.* at 1185.

The Tenth Circuit first addressed Cooper's claim that the district court applied the incorrect definition of relevance. The Court agreed with the magistrate judge that the substantial similarity requirement may be relaxed depending on the context for which it is sought—a high amount of similarity is required to show the existence of a highly dangerous condition, but the substantial similarity requirement is "relaxed" when the evidence is offered to demonstrate notice or awareness of a potential defect. Id. at 1191. Because the plaintiffs sought discovery of similar tires to show notice of a tread separation issue, there was no error in permitting discovery of tires beyond the tire at issue in the case. Id. The Tenth Circuit then held that the magistrate's decision to expand discovery beyond the tire at issue was appropriate: "Cooper essentially seeks to limit the plaintiffs' discovery based upon its own theory of what tires are substantially similar. However, a party should not be limited by its opponent's theory of the case in determining what is discoverable." Id. at 1192. The Tenth Circuit found important that the plaintiffs "identified five specific design and manufacturing flaws" and that the plaintiffs sought discovery as to whether the defendant had prior notice of those flaws. Id. Accordingly, the Tenth Circuit affirmed the lower court's ruling that permitted discovery as to tires other than the tire at issue.

GM is making essentially the same argument that the defendant in *Cooper Tire* did: that

PLAINTIFFS' SECOND MOTION TO COMPEL DEFENDANT GENERAL MOTORS, LLC – Page 11

Plaintiffs should not be permitted discovery about GM's knowledge of the risks and benefits of the Safer Designs as used in its other vehicles because GM chose to not equip those systems on the subject Van. The Court should follow *Cooper Tire* and conclude that, as Plaintiffs seek discovery of this information not solely to show the existence of a dangerous condition but also to show that GM had notice of a potential defect and had alternative Safer Designs that could have been used, the discovery that Plaintiffs seek satisfies the requirements of *Fed. R. Civ. P. 26(b)(1)*. The admissibility of the evidence will be determined at trial, as the Tenth Circuit held. *Id*. at 1191-92.

The Oklahoma Supreme Court considered and rejected GM's similar arguments in *Collins v. Dixon*, Case No. MA-111430 (Okla. March 11, 2013) (unpublished opinion).[20] In that case, the plaintiff sought discovery related to seat heaters in vehicles other than the subject vehicle, and GM opposed based on the same type of "substantial similarity" arguments as have been made in this action. The Oklahoma Supreme Court granted a writ of mandamus and ordered the trial court "to permit discovery requested by Plaintiff's counsel pertaining to 'other similar incidents' in which GM has been sued or has received complaints from consumers or dealers, involving resistive seat heating systems and component parts in all GM model vehicles from 2000 to 2010." *Id.* (citing *Heffron v. District Court of Oklahoma County*, 2003 OK 75, ¶ 3, 77 P.3d 1069, 1073). The Court further cited the *In re Cooper Tire* decision to note that "[a] plaintiff's quest for discovery involving similar incidents in product liability actions should not be dependent upon its opponents' theory of the case" and that "the pretrial discovery phase of litigation requires a more relaxed standard than the admissibility of evidence when considering the substantial similarity of other incidents." *Id.* at 1 n.1 (citing *In re Cooper Tire & Rubber Co*., 568 F.3d at 1191). Oklahoma's highest court has reached similar conclusions in other published decisions. *See Johnson v. Ford Motor Co.*, 2002 OK 24, 45 P.3d 86, 94 (holding that the existence of safer seat belt and restraint systems being used in other vehicles and defendant's knowledge of the risk of harm was relevant to show design defect in the automotive products liability case); *Treadway v. Uniroyal Tire Co.*, 1988 OK 37, 766 P.2d 938 (affirming the verdict for plaintiff as the evidence established defect and causation and not abnormal use or voluntary assumption of the risk). Thus, both Oklahoma and federal law allow the type of discovery that Plaintiffs are requesting.

---

[20] A copy of the Opinion, Petitioner's Brief, and pertinent excerpts of GM's Response Brief are attached as Exh. B-D.

GM argues, as it did in *Collins* and elsewhere, that the substantial similarity doctrine limits discovery to the exact vehicle at issue until Plaintiffs make a showing of substantial similarity. That is mistaken. *Fed. R. Civ. P. 26(b)(1)* provides that information that is relevant to the claims and defenses, and proportional, need not be admissible in evidence to be discoverable. Numerous courts, including the Tenth Circuit, have permitted discovery beyond the precise product that is the subject of suit without a stringent showing of substantial similarity. *E.g. In re Cooper Tire*, 568 F.3d at 1191 (permitting discovery as to tires manufactured to different specifications in order to show notice); *McKellips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 671 (D. Kan. 2015) ("Placing the significant burden of proving substantial similarity on a plaintiff to *obtain discovery* in the first instance would be misplaced, given that the plaintiff has not yet obtained the information it would need to *prove* substantial similarity." (emphasis in original)); *Stratton v. Thompson/Ctr. Arms, Inc.*, 4:18-CV-00040-DN-PK, 2019 WL 6498249, at *6 (D. Utah Dec. 3, 2019) (allowing discovery as to rifles beyond the model of the rifle at issue to show notice of a potential defect in the metal used in the barrels of all of the rifles); *Paeschke v. GM, LLC*, Case No. 4-16-CV-05050-LRS, 2017 U.S. Dist. LEXIS 217788, at *5-12; 2017 WL 7052262 (E.D. Wash. Dec. 1, 2017) (rejecting GM's arguments as to substantial similarity and compelling GM to supplement its responses with the records related to incidents in other GM vehicles with similar seat heater controls as the vehicle at issue); *A.H. ex rel. Hadjih v. Evenflo Co., Inc.*, 10-CV-02435-MSK-KMT, 2011 WL 3684807, at *6 (D. Colo. Aug. 23, 2011) (permitting discovery of types of car seat other than the one at issue and noting that "[f]or discovery purposes, the court need only find that the circumstances surrounding the other accidents or products are similar enough that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences"); *Cummings*, 2002 WL 32713320, at *7 (permitting the plaintiff to question GM's designated witness as to the All-Belts-to-Seats design "in Defendant's vehicles," not merely the subject vehicle); *see also Baine v. Gen. Motors Corp.*, 141 F.R.D. 328, 330 (M.D. Ala. 1991) (ordering production of eleven years of documents regarding the same seat belt locking device used in all GM vehicles, even though the vehicles themselves were different); *Bowman v. Gen. Motors Corp.*, 64 F.R.D. 62, 68 (E.D. Pa. 1974) (ordering discovery of later model vehicles despite GM's affidavits that they were not substantially similar); *Collins*, Case No. MA-111430, at 1 (permitting discovery related to seat heaters in "in all GM model vehicles from 2000 to 2010"); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) (holding, in the context

of admissibility of evidence at trial rather than discovery, that "[t]he substantial similarity rule does not require identical products; nor does it require us to compare the products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect."); *Brennan v. Ford Motor Co.*, CV 14-0006 JAP/KBM, 2016 WL 10179280, at *3 (D.N.M. July 12, 2016) (permitting questioning of the defendant's corporate representative as to similar incidents and stating that "Ford's argument that Plaintiff should have to demonstrate substantial similarity *before* being permitted to pursue the requested discovery turns the admissibility analysis on its head").

In *Brownlow v. General Motors Corp.*, a teenager was rendered a quadriplegic when the GM van he was riding in rolled over and the roof crushed. No. 3:05CV-414-R, 2007 WL 2712925 at *1, *5 (W.D. Ky. Sept. 13, 2007). Plaintiffs sought discovery from GM of alternative designs and other similar incidents regarding three models of its "U-Van," including both earlier and later models of the 2003 Montana model van in which plaintiff was injured, without limitation as to GM division. *Id.* at *1-2, *5-8. GM objected at every turn and filed affidavits claiming the other generations of "U-Vans" were not substantially similar and thus outside the scope of discovery. *Id.* *1. The court was not persuaded:

> **Information concerning prior models of GM U-Vans would remain relevant to issues of defect, notice of defect and GM's possible failure to respond to an alleged defect; whereas, discovery of information related to later models would remain relevant to reasonable alternative designs and their performance.** . . . The Court reaches the same conclusion with respect to that portion of the Magistrate's order that requires the disclosure of rollover accidents that occurred at the GM Proving Ground. While the Magistrate Judge's order does include vehicles beyond the U-Van at issue, his exercise of discretion appears sound to the Court. **Plaintiff is entitled to discover whether GM reinforced the roofs of vehicles involved in rollover accidents; and, if so, whether such vehicles with reinforced roofs suffered minimal roof crush as a result.** Plaintiff is entitled to anticipate GM's litigation position that additional roof strength is unrelated to improving passenger safety in its vehicles.

*Id.* at *5 (emphasis added). Just as in *Brownlow*, Plaintiffs in this case are entitled to know whether GM received notice of the risks and defects in its vehicles through its field analysis, OSIs, and design analysis of prior model vehicles before designing the subject vehicle and/or whether it could have used alternative designs, such as the alleged Safer Designs, to reasonably minimize frontal collisions like the collision at issue in this case.

Plaintiffs' OSI discovery is narrowly tailored to the subject model vans with ABS and

without the alleged Safer Designs that were involved in frontal collisions with the rear end of other vehicles and to the alleged Safer Designs like the cases cited above, and the information sought in the discovery is in GM's possession, custody or control.[21] *C.f., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992) ("[D]iscovery may be allowed where a plaintiff alleges that the defendant was on notice of defect, that an alternative design was feasible and the defendant had knowledge of the same, that a defendant did not eliminate a previously occurring defect in design, or that previous, similar accidents related to the accident at issue had occurred."). Thus, compelling GM to supplement its discovery responses as to its notice or awareness of the risks and defects and the benefits of equipping the Safer Designs will reveal what GM knew about the risks posed by the Van which is relevant to the claims and defenses under *Fed. R. Civ. P. 26(b)(1)*.

GM's current responses, based upon its boilerplate objections and restrictive scope, are incomplete, inexplicit, and unresponsive and should not be permitted. *McKellips*, 305 F.R.D. at 671 (A party asserting the objection must specifically show, despite the broad discovery rules, how each interrogatory and request for production is objectionable.); *Miller v. Doctor's General Hosp.*, 76 F.R.D. 136, 139-40 (W.D. Okla. 1977) ("The answers to interrogatories must be responsive, full, complete and unevasive."); *Fed. R. Civ. P. 37(a)(4)* (treating an evasive or incomplete answer or response as a failure to answer or respond). GM should not be permitted to have its cake and eat it too by arguing that the Van is not defective or that it did not know of the risks of not using a safer design while at the same time withholding the documents that show it did have such knowledge. *Reibert v. CSAA Fire & Cas. Ins. Co.*, 2018 U.S. Dist. LEXIS 860 at *13. Therefore, GM's improper boilerplate objections should be overruled and GM should be compelled to answer Plaintiffs' discovery, pursuant to *Rule 26(b)(1), 37 (a)(3)(B)(iii)-(iv), (4),* and the Tenth Circuit's substantial similarity standard as enunciated in *Cooper Tires* and its progeny.

**C.     GM has failed to prove that Plaintiffs' discovery is not proportional.**

GM has the burden of proving that the discovery is not proportional to the needs of this case. *Fed. R. Civ. P. 26(b)(1)*. GM has failed to meet its burden for five reasons.

First, GM has failed to explain, much less prove, that Plaintiffs' discovery is not proportional to the overriding issue at stake in this case, which is whether or not GM defectively designed the Van, failed to warn of the risks to its consumers, and failed to promptly recall the

---

[21] Hannemann Declaration, Exh. A, p. ¶ 33.

Van to remedy the defects.[22] Consequently, every consumer who uses the subject model vans has a stake in these matters, as their lives literally depend upon the safety of the vans and GM promptly recalling the vehicles when it becomes aware of a defect as required by federal law.

Second, GM has not proven that the discovery is disproportional to the amount in controversy. The injuries and damages alleged by Plaintiffs are detailed in their Initial Disclosures and the alleged damages range from $54,017,215.10 to $79,794,785.46. (Docket 23, at 34-70).

Third, the discovery sought herein is within the possession, custody or control of GM.[23] Thus far, GM has failed to identify a single individual with knowledge of the field analysis, OSIs, the suppliers of the Safer Designs from 2003 through 2013, the management employees who made decisions about whether or not to equip the Safer Designs on the subject model vans as compared to other vehicles, or the design release engineers and management employees that approved the Van's designs, testing, and warnings as sought in Plaintiffs Interrogatories Nos. 5, 7, 10-14, and 17.[24] Likewise, GM has failed to produce the records, depositions, and videos of the depositions from the OSIs, the prior depositions and videos of the depositions of GM's corporate representatives, management, design release engineers, and employees on the alleged Safer Designs, the design objectives and performance standards, modeling, testing, costs, and profits of the Safer Designs, the records showing when GM began to budget and develop the Safer Designs, the cost-benefit analysis for the Safer Designs, the Rollout Plans for the Safer Designs, the net worth of GM, the designs and testing of the safety systems of the van, the photographs and videos of the vehicles and scene by its consultants, and warnings about the risks as requested in response to Plaintiffs' Request for Production Nos. 1-7, 9-10, 12-16, 18, 25-30, 37-38, and 41-42.[25] Plaintiffs' discovery tracks the factors that the jury must consider in awarding punitive damages pursuant to *Okla. Unif. Jury Instr. Civil (3d) § 5.9* and should be promptly supplemented by GM.

Fourth, GM, as one of world's largest automobile manufacturers, has far greater resources than Plaintiffs. For example, as stated in its press releases, GM had $6.4 billion in income in 2020 and free cash flow of $2.6 billion.[26]

---

[22] Plaintiff's Complaint (Dkt. No. 2, ¶¶ 54, 66(f), Exh. A-2).
[23] Hannemann Declaration, Exh. A, ¶ 33.
[24] Hannemann Declaration, Exh. A-4.
[25] Hannemann Declaration, A-5.
[26] "GM Reports Strong 2020 Full Year and Fourth-Quarter Results," PR NEWSWIRE (February 10, 2021), https://www.prnewswire.com/news-releases/gm-reports-strong-2020-full-year-and-fourth-quarter-results-301225548.html.

Fifth, the individuals with knowledge of relevant facts and the responsive records to the discovery are essential to Plaintiffs' claims as they are the most probative evidence of the claims and defenses in this case as discussed above.

Finally, GM has not proven that the discovery will be unreasonably burdensome and thus outweighs its likely benefit. The records sought by Plaintiffs have been scanned and databased by GM. Accordingly, the discovery can be collected and easily produced to Plaintiffs with an electronic link as GM has done with the production of its records to date, dispensing the need and costs of producing paper copies of the responsive records. Moreover, Plaintiffs' have agreed to rely upon the deposition testimony of GM's Rule 30(b)(6) representative on the alleged Safer Designs from 2014 to the present to alleviate any alleged undue burden to GM.[27]

## IV.
## CONCLUSION

Plaintiffs respectfully requests this Court to issue an order overruling the general objections and compel Defendant General Motors LLC to supplement its answers to Plaintiff's First Set of Interrogatories Nos. 2-7, 9-18, and Plaintiff's First Requests for Production Nos. 1-7, 9-10, 12-16, 18, 25-30, 37-38, and 41-42, within ten (10) days of the Court's Order, and for all other and further relief deemed equitable and just herein.

Respectfully Submitted,

*Lee Brown*
Lee Brown
THE BROWN LAW FIRM
3026 Mockingbird Ln
DALLAS, TX 75205-2323
214-624-3400
214-624-3401
lbrown@leebrownlaw.com
**ATTORNEY FOR ALL PLAINTIFFS**

---

[27] Hannemann Declaration, Exh. A-8, p. 10 & 12.

| | |
|---|---|
| Chris D. Parker<br>FARRIS PARKER & HUBBARD<br>5700 SW 45th Ave.<br>Amarillo, TX  79109<br>Telephone: (806) 374-5317<br>Fax: (806) 372-2107<br>cparker@pf-lawfirm.com<br>**ATTORNEY FOR PLAINTIFF**<br>**MISTY YOUNGBERG** | Ryan J. Fulda<br>SCHAFFER HERRING PLLC<br>7134 South Yale, Ste. 300<br>Tulsa, Oklahoma 74136<br>Telephone: (918) 550-8105<br>Fax: (918) 550-8106<br>ryan.fulda@schafferherring.com<br>**ATTORNEY FOR PLAINTIFFS**<br>**KEVIN AND HEIDI COFFMAN** |
| Andrew C. Jayne<br>Courtney L. Cagle<br>BAUM GLASS JAYNE CARWILE<br>& PETERS, PLLC<br>401 S. Boston Ave., Suite 2300<br>Tulsa, Oklahoma 74103<br>Telephone: (918) 938-7944<br>FAX: (918) 938-7966<br>ajayne@bgjclaw.com<br>ccagle@bgjclaw.com<br>**ATTORNEYS FOR PLAINTIFFS**<br>**TIFFANY AND CHRISTOPHER**<br>**WALDROP** | Trevor L. Hughes<br>JOHNSON & JONES, PC<br>Two Warren Place<br>6120 South Yale Ave., Suite 500<br>Tulsa, Oklahoma 74136<br>Telephone: (918) 584-6644<br>Fax: (888) 789-0940<br>thughes@johnson-jones.com<br>**ATTORNEY FOR PLAINTIFFS**<br>**WILLIAM OVERSHINER AND**<br>**LAUREN PADGETT** |
| J. Daren Brown<br>STOCKARD, JOHNSTON, BROWN &<br>NETARDUS, P.C.<br>1800 S. Washington, Suite 307<br>Amarillo, Texas  79105<br>Telephone: (806) 372-2202<br>dbrown@sjblawfirm.com<br>**ATTORNEY FOR PLAINTIFFS**<br>**SEAN AND CHRISTIE CONNELL** | Molly Aspan<br>Hall, Estill, Hardwick, Gable, Golden &<br>Nelson, P.C.<br>320 South Boston Avenue, Suite 200<br>Tulsa, Oklahoma 74103<br>Telephone: (918) 594-0595<br>Facsimile: (918) 594-0505<br>maspan@hallestill.com<br>**ATTORNEY FOR ALL PLAINTIFFS** |